The STATE of Ohio, Appellee,

v.

IVEY, Appellant.

[Cite as *State v. Ivey* (1994), 98 Ohio App.3d 249.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65728.

Decided Oct. 3, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Thomas E. Conway,* Assistant Prosecuting Attorney, for appellee.

*John G. Griffin,* for appellant.

---

JAMES M. PORTER, Judge.

Defendant-appellant Leslie Ivey appeals from his conviction following a jury verdict of child endangerment of his son on several counts in violation of R.C. 2919.22. Defendant claims the indictment failed to charge the requisite culpable mental intent and that the evidence was insufficient to sustain the convictions. We find there is merit to the appeal and reverse for the reasons hereinafter stated.

The case arose out of a father's whipping of his ten-year-old son for failing to tell him about a detention at school.

On March 23, 1992, the defendant was concerned when his ten-year-old child, Nocias Ivey, did not come home after school, which let out at 3:00 p.m. Defendant went to his son's local Cleveland public school. Defendant approached the school's principal and was notified that his son was in detention. Defendant demanded to know why he was not notified and was told that a notice of the detention should have been brought home by his son. Defendant went to search his son's school desk to determine if he had received the notice but had decided not to show it to his father. On the way to his son's classroom, defendant saw his son exiting the detention room. Defendant ordered his son to "come here," and the defendant then flipped his arm out and hit his son in the chest. He said, "let's go," and led his son out of the school and to the family car.

Both the father and son testified that, upon entering the car, defendant verbally chastised his son for his conduct. In response, the child pulled down his ski mask so as to hide his face from his father. The defendant moved to pull up

his son's ski mask, and hit his son in the left eye. This caused the eyelid to develop a bruise.

Upon returning home, defendant disciplined his son by whipping his buttocks and legs with a belt. The son moved his arms and hands to his rear end to deflect the blows and his arm and hands were hit by the belt. However, the boy testified that his swollen hand, which was examined by a doctor the next day, was caused by a skateboarding accident which occurred prior to the corporal punishment administered by his father.

When the defendant's son went to school the next day, the principal noticed that the boy had a black eye and a swollen left hand. She called for the school nurse who observed welts left by the defendant's whipping which occurred the day before.

The principal suspected child abuse and called Social Services. Nancy Gray, a social worker, arrived at the school at 3:00 p.m. and transported the boy to children's services. Once again, defendant went to the school when his son did not return home from school on time. He was told his son had been removed from school by children's services.

Defendant drove to the agency to recover his son. However, he was informed that his son would be held in custody by the agency until an investigation could be completed. After the defendant left the agency, the boy was treated at University Hospital.

At University Hospital, the boy was examined by a doctor, Lisa Baker, M.D. The doctor testified there were bruises and swelling on his buttocks and legs. She stated that the sides of his arms and backs of his hands were swollen and bruised. He also had a few open cuts on his right buttock area. She also noted that he had older bruises that he told her were from prior beatings. She also stated that there was a scrape of indefinite origin and age on the boy's chest which was struck by the defendant when he escorted his son out of school the previous day. The doctor also stated that regarding the boy's swollen left hand, she had not seen skateboarding injuries like that before, and admitted that she did not ask the boy how he received this injury.

The doctor stated that the black eye was consistent with being punched by a fist. She did not know whether being struck with a finger could cause the same bruising. The doctor found no evidence of new or old fractures and immediately released Nocias Ivey without prescribing any medication or dressing of any of his bruises. No subsequent appointment was scheduled.

The son was released to a Mrs. Gray, as a representative of the agency, and she proceeded to place him in a foster care home as she believed, due to the extensive nature of the bruises, Nocias would be at risk if left with his father.

Prior to commencement of the trial, Nocias Ivey was interviewed by Edward Becker, a clinical social worker at the Juvenile Court Psychiatric Clinic. Becker testified that in a confidential interview the defendant's son verified that the black eye he sustained on March 23, 1992, was caused by his father's removal of his ski mask. He also testified that Nocias was hesitant when he first saw his dad, but relaxed quite a bit as the interview progressed.

Defendant and his son were also interviewed by Samuel Selekman, a child abuse specialist. Selekman stated that Nocias Ivey did not fear living with his father, and that the boy was playful and loving with his father during the interview. Furthermore, the boy told Selekman that his hands were injured by a skateboard accident which occurred prior to the whipping his father administered to him. Selekman also admitted that although the pictures showed "serious" injury, they did not clearly show the child was excessively punished. He stated that other circumstances must be considered. He had not seen the pictures before trial and stated they were "upsetting."

A jury trial was commenced on April 7, 1993. Prior to the impaneling of the jury, the trial court judge accepted a stipulation to the violence specification as to counts two, three and four. On April 9, 1993, the jury returned a verdict of guilty as to counts one, two and three. The defendant was found not guilty of the fourth count in the indictment.

His appeal therefrom was timely filed.

"I. The trial court erred and violated the defendant's Sixth and Fourteenth Amendment right to a fair trial in failing to dismiss the indictment against the defendant for failing to include the requisite culpable mental state.

"A. The culpable mental state of recklessness must be alleged in the indictment in order to charge the criminal offense of child endangering.

"B. Appointed trial counsel's failure to file a motion to dismiss the indictment for failure to state the requisite culpable mental state deprived the defendant of the assistance of competent counsel."

This assignment of error is without merit.

Neither prior to nor during trial did defendant move to dismiss the indictment or challenge the counts for failure to include the requisite *mens rea* element of recklessness. Had defendant raised the issue at the appropriate time, the state of Ohio would no doubt have amended the indictment pursuant to Crim.R. 7(D). *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, paragraph two of the syllabus. In *O'Brien*, in allowing the amendment of the *mens rea* element of recklessness to a child endangering indictment, the court held that:

"An indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment. (Crim.R. 7[D], construed and applied.)" *Id.* at paragraph two of the syllabus.

■ Defendant was not prejudiced by the omission of the "recklessness" language from the indictment. The prosecutor, the judge, and defense counsel were all mindful of the recklessness requirement. The jury was properly charged on the applicable mental culpability standard of recklessness. Defense counsel was satisfied with the court's charge on that element. Therefore, defendant was not prejudiced by the failure to include "recklessness" in the indictment. See *Cleveland v. McClendon* (Apr. 8, 1993), Cuyahoga App. No. 62045, unreported, 1993 WL 106953; *State v. Marschat* (Jan. 25, 1990), Richland App. No. CA–2764, unreported, 1991 WL 12812; *State v. Andrews* (July 8, 1987), Medina App. No. 1541, unreported, 1987 WL 14034.

■ As defendant did not object to or raise the issue of the indictment's omission, he also waived any claim of error. As *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, held:

"An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."

■ Defendant seeks to invoke the "plain error" rule pursuant to Crim.R. 52(B). In *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, the court held that:

"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of syllabus.

Under *State v. Long,* defendant had the burden of showing that: "but for the error, the outcome of the trial clearly would have been otherwise." *Id.* at 97, 7 O.O.3d at 181, 372 N.E.2d at 808.

■ The record in the case at bar clearly does not meet the above criteria and does not rise to the level of plain error under Crim.R. 52(B). The jury considered and was properly instructed on the law. Since we cannot find that the outcome would have been different, we do not find that counsel was ineffective in failing to object to the indictment. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. This assignment of error is without merit and is overruled.

"II. The trial court committed reversible error in denying the defendant's motion for acquittal as to the second and third counts of child endangering at the close of state's evidence and at the close of all evidence where the state failed to prove through sufficient evidence that the defendant's acts created a substantial risk of serious physical harm to the child."

We find that this assignment of error has merit.

In order to prove its case on Counts II and III, the state had the burden of showing that the child was "abused" with resulting "serious physical harm," R.C. 2919.22(B)(1), (D), and that the corporal punishment was "excessive" and "creates a substantial risk of serious physical harm to the child." R.C. 2919.22(B)(3). Serious physical harm is defined under R.C. 2901.01(E) as follows:

"(E) 'Serious physical harm to persons' means any of the following:

"(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(2) Any physical harm which carries a substantial risk of death;

"(3) Any physical harm which involved some permanent incapacity, whether partial or total, or which involved some temporary, substantial incapacity;

"(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

"(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."

"When a defendant challenges the legal sufficiency of the state's evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825. "The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720.

Defendant argues that his conviction for child endangering, under the second and third counts of the indictment, was not based on sufficient evidence that the defendant's acts resulted in serious physical harm or created a substantial risk of serious physical harm to the child. R.C. 2901.01(H) states that " 'substantial risk' means a strong possibility, as contrasted with remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

The injuries sustained by the boy were a bruised left eyelid, bruises, welts, and lacerations caused by a belt whipping on the buttocks and lower legs, and a

swollen hand. We find that these injuries did not cause the child serious physical harm or threaten substantial risk of same as defined by R.C. 2901.01(E). They did not result in hospitalization, substantial risk of death, permanent incapacity, disfigurement, or substantial pain or suffering, as required by that statute. The record shows that the defendant's son was simply examined and released without medication or orders to return for a checkup. The impact of his whipping was disciplinary and transitory.

The bruised eyelid asserted in the second count of indictment was the result of the defendant's removal of his son's ski mask, as the son testified. In any event, it did not cause a substantial risk of physical harm to the boy. The injury was slight and required no treatment or medication to ensure proper healing.

The injuries that resulted in count three of the indictment were a swollen hand and bruised buttocks and upper legs. The swollen hand was not the result of any act by the defendant. The victim, when asked, repeatedly explained that his swollen hand was caused by a skateboarding accident which occurred prior to his whipping. Even if caused by the boy warding off the blows from the belt, it was not a serious injury. Excluding the swollen hand, the only injuries that remained are the bruises caused by the belt whipping on the boy's buttocks and legs.

Although the punishment may have been excessive, the state produced no evidence that the bruises and welts caused by the strapping resulted in serious physical harm or created a substantial risk of serious physical harm. On the contrary, the evidence showed the boy went to school, without incident, the next day. There was no evidence he was in great pain or that he had trouble sitting or walking. The treating physician did not find it necessary to hospitalize the boy, order any type of pain killer (even aspirin), or to schedule another medical exam to check on his progress.

The evidence presented in the record shows the injuries sustained by the child were the result of the imposition of corporal punishment by a father who judged his son's school conduct and acts of deception warranted a strong physical disciplinary response. The state failed to prove by sufficient evidence that this type of whipping resulted in serious physical harm or could result in a substantial risk of serious physical harm to the child.

This assignment of error is sustained.

■ "III. Whether the trial court erred and violated the appellant's Sixth and Fourteenth Amendment right to a fair trial when it overruled appellant's motion for acquittal as to all counts when the jury's verdict was against the manifest weight of the evidence."

The standard for determining a motion for acquittal has been set out in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus, as follows:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

Based on our discussion in Assignment of Error II, as to Counts II and III, the motion for acquittal should have been granted as the evidence is insufficient that the punishment resulted in serious physical harm or created a substantial risk of serious physical harm beyond a reasonable doubt.

In Count I, the father was charged with abuse under R.C. 2919.22(B)(1), as opposed to abuse resulting in "serious physical harm" under (B)(1), (D) and the "corporal punishment" (B)(3), discussed *supra* in conjunction with Counts II and III. The statute does not define "child abuse" or "abuse [of] the child." However, we believe it should be similarly defined as abuse which threatens serious physical injury. As stated in *State v. Bogan* (June 14, 1990), Montgomery App. No. 11920, unreported, 1990 WL 80572, at 3–4:

"The requisite culpable mental state for the crime of child endangering is recklessness. See *State v. Adams* (1980), 62 Ohio St.2d 151 [16 O.O.3d 169, 404 N.E.2d 144]; *State v. O'Brien* (1987), 30 Ohio St.3d 122 [30 OBR 436, 508 N.E.2d 144].

"To establish a violation of R.C. 2919.22(B)(1), the state must prove, beyond a reasonable doubt: (1) that the child is under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, (2) an affirmative act of abuse (*State v. Kamel* [1984], 12 Ohio St.3d [306] [12 OBR 378, 466 N.E.2d 860] ), and (3) which act was reckless, that is, perpetrated with heedless indifference to the consequences of the action (R.C. 2901.01[H] ).

"Though 'child abuse' is not specifically defined in R.C. 2919.22, common sense and the general language of the provision and its accompanying Legislative Service Commission comments indicate that an act which inflicts serious physical harm or creates a substantial risk of serious harm to the physical health or safety of the child is child abuse. Cf. Committee Comments to R.C. 2919.22; R.C. 2151.031; *State v. Artis* (1989), 46 Ohio App.3d 25 [545 N.E.2d 925]."

The earlier case noted in *Bogan* is *In the Matter of Noftz* (Aug. 22, 1986), Huron App. Nos. H–85–26 and H–86–11, unreported, 1986 WL 9098, which supports the same conclusion:

"Upon a review of R.C. 2919.22, we specifically note that it was effective April 9, 1985. The statute, unlike its predecessor statute, now allows the trier of fact

to find that the parent has endangered the child when the parent has 'abused' the child. R.C. 2929.22(B)(1). The legislature, however, has not specifically defined what constitutes 'abuse' of a child. It would appear then that the legislature was attempting to give a trial court broader discretion in determining when there has been an abuse of the child.

"Black's Law Dictionary (5th Ed.1979) 217, provides guidance when it defines 'child abuse' as '[a]ny form of cruelty to a child's physical, moral or mental well-being.' Absent a legislative definition, this judiciary must provide the applicable definition. Application of this definition would necessitate the trial court reviewing the totality of the circumstances to determine whether there has been sufficient physical, mental and psychological harm to the child to permit a finding of abuse. Obviously, the trial court will look at many of the factors present in R.C. 2919.22 to determine whether the child has been abused. In making the determination of abuse, the trial court must look at the circumstances giving rise to the harm to the child, the disciplinary measures employed by the parent, the child's past history, and any other potential relevant factors. Of importance when evaluating the physical harm to a child is whether the nature of the physical harm is warranted based upon the underlying circumstances. Clearly parents are entitled to utilize disciplinary measures for their children, however, such discipline must not be of such gravity that it becomes unreasonable in light of the underlying cause. These factors are necessary for the determination that a child had been abused under R.C. 2919.22(B)(1). The same factors would be evaluated pursuant to R.C. 2919.22(B)(3) and (4). See, also, R.C. 2901.01 (the section provides definitions for physical harm to persons, serious physical harm to persons, risk, and substantial risk)."

■ Drawing on these authorities, we conclude that the state did not present sufficient evidence that this father abused his child in violation of the statute. Parents are responsible for the upbringing, education and discipline of their children, as parents have a fundamental liberty interest in the care, custody and management of a child. *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171, citing *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558. The state should intervene only when a serious risk of physical or mental harm to the child is clear from the evidence. Parents have to be given reasonable latitude to impose discipline as the best interests of the child dictate. Some children need more discipline than others. Some respond without ever being struck—a sharp word suffices. It is the parent who in the first instance is the best judge of what works with each child.

■ In this case, the evidence strongly suggests a loving, but strict father, who was not going to let this son get away with deception. The fact that he came to the school each day when the son did not come home on time shows a degree of

diligence many children could benefit from. The mere use of a belt for corporal punishment was not *per se* abusive. *In the Matter of Bretz* (Dec. 12, 1990), Holmes App. No. C.A. 419, unreported, 1990 WL 210753. Furthermore, "bruising alone is insufficient to establish abuse." *In re Schuerman* (1991), 74 Ohio App.3d 528, 532, 599 N.E.2d 728, 730. There was nothing torturous or cruel about the punishment, nor any indication the father was administering it out of a spirit of malice or sadism. Since the harm that resulted was temporary and slight, and did not require medical attention, we find no evidence of reckless child abuse punishable under the statute.

This assignment of error is sustained.

The judgment is reversed and the defendant is discharged.

*Judgment reversed.*

KRUPANSKY, P.J., concurs.

DYKE, J., dissents.

DYKE, Judge, dissenting.

I would respectfully dissent from the majority's rulings as to assignments of error two and three. I would overrule those assignments of error and affirm the jury's verdicts of guilty as to all three counts of the indictment.

The majority found that the injury to Nocias was "temporary and slight." This is not what the jury determined after viewing the photos taken in the emergency room and after hearing the testimony of the school principal, the school nurse, and the emergency room doctor. After a thorough review of the record, I find that the jury had sufficient evidence before it to find appellant guilty of child endangerment and both counts of child abuse.

The majority correctly stated the standard of review applicable when determining whether the evidence was sufficient to overrule a motion for acquittal:

"When a defendant challenges the legal sufficiency of the state's evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825.

Given the testimony and medical records presented to the trier of facts below, viewed in a light most favorable to the prosecution, I must conclude that any rational trier of fact could have found that appellant exceeded the reasonable bounds in administering corporal punishment to Nocias, such that a substantial risk of serious harm to the boy existed.

The school principal noticed Nocias's black eye when he came to the office the day after the beating to request a bandage for his hand. After Nocias responded to the principal's question regarding his eye to the effect that his father had hit him while sitting in the car, the principal called in the school nurse. Upon examining his body, the principal noted welts on his arms and legs, consistent with the photos taken later in the emergency room.

The nurse wrote on Nocias's health card, kept on record at the school, that she "noted a left black eye. Student's right and left arms had red welt marks over them. Right hand very swollen with reddened welts. Welt marks over both legs as well. Marks look linear. Student stated that his father beat him with a belt and punched him in his eye."

The social worker called in by the principal testified that she first saw Nocias at three in the afternoon at his school. She testified that:

"Nocias had a dark purplish bruise under his left eye, his left hand was swollen and it had welt marks on it and open sores, and he had welt marks on his legs all the way down to his calfs, and on his arms."

The social worker later made the decision to take Nocias to the hospital after first taking him to the Department of Human Services, because she decided he required treatment. She stated, "basically the bruises were so extensive on the child that we felt that he was at risk if he remained in his dad's home."

Dr. Lisa Baker and the medical history contained in the record both indicate that Nocias came to the emergency room the night after the beating with a "bruise under his left eye, he had multiple bruises on his arms and legs, his buttocks were both swollen, the left worse than the right, he had red areas and purplish areas on the sides of his arms, and the backs of his hands were also very swollen and very bruised with small cuts, he also had a single scrape mid-chest."

The facts of this case are similar to those in *In re Schuerman* (1991), 74 Ohio App.3d 528, 599 N.E.2d 728. Amber was visiting her father when he noticed bruises on her legs and upper thighs. Amber told him that her mother sometimes hit her with a belt or paddle for not doing her chores. The trial court found Amber to be an abused child under R.C. 2919.22. The appellate court affirmed, ruling that:

"The Revised Code does not specifically define what actions constitute the abuse of a child. Thus, the trial court, in its broad discretion, is to make its determination of abuse on a case-by-case basis. * * * The court is to review the totality of the circumstances, looking for any form of cruelty to the child, either physical or mental. Specific factors to be considered by the trial court in making a determination of abuse include the circumstances giving rise to the harm to the

child, the past history of the child, the nature and manner of the discipline administered to the child and the measure of discipline. * * *

"The law of Ohio has long recognized that parents have the right of restraint over their children and the duty of correcting and punishing them for misbehavior. However, such punishment must be reasonable and not exceed the bounds of moderation and inflict cruel punishment. See *State v. Liggett* (1948), 84 Ohio App. 225, 39 O.O. 287, 83 N.E.2d 663. R.C. 2919.22 not only prohibits a parent from violating his or her duties of care, protection and support, but also prohibits a parent from administering to a child under eighteen years of age corporal punishment which is excessive and which creates a substantial risk of serious harm to the child. * * *" *In re Schuerman*, 74 Ohio App.3d at 531, 599 N.E.2d at 730.

The photos of Amber showed severe bruising on the child's buttocks, upper thighs, and around her ankles and wrists. The court held that:

"[F]rom the evidence presented in the case *sub judice*, the trial court could reasonably infer that Amber Schuerman was in substantial risk of serious physical harm from discipline administered with such force that bruising was caused. The severe bruising depicted in the photographs of Amber Schuerman could certainly be inferred to create pain that would be unbearable or nearly so to an eight-year-old. See *In re Rogers* [(Aug. 24, 1989), Putnam App. No. 12–89–5, unreported, 1989 WL 98423], *supra*. Admittedly, bruising alone is insufficient to establish abuse. However, the record contains substantial credible evidence corroborating the court's finding." *In re Schuerman*, 74 Ohio App.3d at 532, 599 N.E.2d at 731.

In a claim brought by a child against her stepmother, where the trial court granted summary judgment to the defendant, this court held that:

"Where a fine line exists as to whether conduct constitutes 'reasonable corporal punishment' or a claim such as assault and battery, it is for the trier of fact to make a factual determination based on the evidence proffered and existing legal standards." *Murray v. Murray* (1993), 89 Ohio App.3d 141, 146, 623 N.E.2d 1236, 1240.

Although I do believe that a fine line exists in this case where the punishment clearly appeared excessive, I would agree that it is an issue for the trier of fact to determine whether the conduct in this case exceeded reasonable corporal punishment. The trier of fact concluded that the conduct did in fact exceed the standard prescribed by the statute. I would affirm that finding as it is well supported by the testimony and record before us.