OPINION
{¶ 1} Defendant-appellant, Brenda Robinson, appeals her convictions in the Clinton County Court of Common Pleas for felonious assault and child endangering. We affirm the decision of the trial court.
 {¶ 2} Ethan Hines was born on August 12, 2000 to Jim and Angela Hines. In October of 2000, Jim and Angela moved to an apartment complex in Clinton County. Appellant, Angela's stepmother, also resides in the same apartment complex.
 {¶ 3} Appellant began babysitting Ethan and his brother, Uriah Hines, in December of 2000. On December 15, 2000, Ethan was giggling and alert when he was taken to appellant's apartment before Jim and Angela left for work. At approximately 11:00 p.m. appellant phoned 9-1-1. Emergency medical technicians ("EMTs") arrived shortly thereafter. While the EMTs were treating Ethan, appellant told them that Ethan had been fed about 20 minutes before they arrived and that he was not breathing at one point. The EMTs suggested that Ethan should be taken to the hospital. However, appellant did not want to leave the other children in her care alone or bring them to the hospital so she refused to allow Ethan to go to the hospital. The EMTs requested that appellant sign a refusal for treatment form before leaving Ethan.
 {¶ 4} When Jim and Angela returned from work after 2:15 a.m., they quickly realized that Ethan needed medical attention. They called 9-1-1. Emergency medical services arrived and took Ethan to Clinton Memorial Hospital. At the emergency room, Dr. Aaron Bender examined Ethan and noted bruises on his shoulder blade, bruising around his right eye, and petechiae. Dr. Bender ordered a CT scan. Dr. Bender and Dr. Martin Mitchell reviewed the CT scan and realized Ethan had suffered a serious brain injury.
 {¶ 5} Ethan was admitted to Children's Hospital and diagnosed with abusive head trauma or shaken baby syndrome. Dr. Marguerite Caré, a pediatric neuroradiologist at Children's Hospital in Cincinnati, observed subdural hematomas, which is bleeding in Ethan's brain. Subsequent CT scans showed that parts of Ethan's brain were dying. Ethan's prognosis was that he would be significantly visually impaired. He will have permanent disability, such as cerebral palsy, and he will never be able to function in a normal classroom. Ethan will appear to have a very small head because his brain will not continue to grow and he may have problems with muscle control.
 {¶ 6} Appellant was interviewed regarding what happened to Ethan. At first, appellant denied shaking Ethan, but she eventually conceded that she shook him. However, appellant maintained that she shook Ethan because he stopped breathing.
 {¶ 7} On February 7, 2001, appellant was indicted for felonious assault and endangering children. A jury trial began on October 22, 2001. Appellant was found guilty of both charges. Appellant appeals her convictions raising two assignments of error.
Assignment of Error No. 1
 {¶ 8} "Appellant's conviction, as a matter of law, was not supported by legally sufficient evidence."
 {¶ 9} Appellant argues that the state "failed to prove, with legally sufficient evidence, that appellant knowingly committed the offense of felonious assault" in violation of R.C. 2903.11. Appellant maintains that she did not knowingly assault Ethan, but rather she was helping him as he was "gasping for air and struggling to breathe."
 {¶ 10} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless it finds that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh,90 Ohio St.3d 460, 484, 2001-Ohio-4. Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact who observed the witness in person. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 11} As previously stated, appellant was charged with assault in violation of R.C. 2903.11. R.C. 2903.11 states that "no person shall knowingly * * * (1) cause serious physical harm to another or to another's unborn." A person acts knowingly when they are aware that their conduct will probably cause a certain result. See R.C. 2901.22(B).
 {¶ 12} Appellant contends that the state failed to prove that her actions were done knowingly. However, there is evidence that she acted knowingly. Appellant initially denied that she shook Ethan the day of the incident. The following day, Detective Chris Lester of the Clinton County Sheriff's Office interviewed appellant. At the beginning of the interview, appellant stated that she knew why she was being interviewed and that "she had not done anything to Ethan." During the interview, appellant conceded that she did shake Ethan. Appellant admitted that she shook Ethan by holding him under the arms and moving him back and forth. Appellant stated that she shook Ethan and then she put him down. She stated that Ethan then had difficulty breathing so she picked him up again and shook him even harder than she had before. When appellant was asked during the interview if she shook Ethan "hard enough to injure him," she answered, "I would say so."
 {¶ 13} Appellant was also interviewed by caseworker Stephanie Newkirk of Clinton County Children's Services. Newkirk asked appellant if Ethan's head went "all the way back and the chin all the way to his chest all the way forward" when she shook him. Appellant stated that "it did." Appellant further acknowledged that she had shaken him in the past while she was "playing" with him. Appellant told Newkirk that the shaking was "pretty hard, but not hard enough to break his neck."
 {¶ 14} Dr. Neha Metha testified that "often during a shaking kind of process a baby might stop breathing, and that can also cause damage because there's lack of oxygen to the brain." Dr. Metha further testified that Ethan's injuries were "not something that occurred from any kind of routine handling, routine accidents and normal falls." Dr. Bender testified that Ethan's brain injury was severe.
 {¶ 15} An element may be established by direct evidence, circumstantial evidence, or both. See State v. Durr (1991),58 Ohio St.3d 86, 92-93. Circumstantial evidence and direct evidence are of equal evidentiary value. State v. Jenks, 61 Ohio St.3d at 272. Therefore, we find that, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of assault beyond a reasonable doubt.
 {¶ 16} Appellant also argues that the state failed to prove, "with legally sufficient evidence, that appellant recklessly committed the offense of endangering children" in violation of R.C. 2919.22. R.C.2919.22(B) states that, "[n]o person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: (1) abuse the child." The operative mental state of this offense of endangering children is recklessly. SeeState v. Ivey (1994), 98 Ohio App.3d 249, 257. A person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." See R.C. 2901.22(C). Appellant contends that the element not proven was that her actions were done recklessly.
 {¶ 17} The record reflects that appellant shook Ethan and then put him down. Ethan struggled to breathe after the shaking so appellant shook him even harder a second time. Appellant further acknowledged that she had shaken Ethan in the past "pretty hard, but not hard enough to break his neck."
 {¶ 18} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of endangering children beyond a reasonable doubt. Therefore, we find that reasonable minds could reach the same conclusion reached by the trier of fact. Consequently, the first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 19} "Appellant's conviction should be reversed because it is contrary to the manifest weight of the evidence."
 {¶ 20} Appellant argues that the evidence in this case does not prove beyond a reasonable doubt that appellant acted either recklessly or knowingly when she shook Ethan. Appellant maintains she shook Ethan in an attempt to help him breathe, therefore, the verdict should be reversed as it is against the weight of the evidence.
 {¶ 21} When deciding whether a conviction is supported by the manifest weight of the evidence, a court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. An appellate court should vacate a conviction and grant a new trial only when the evidence weighs strongly against the conviction.State v. Martin (1983), 20 Ohio App.3d 172, 175. In addition, the reviewing court must be aware that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 22} In the present case, the complaint alleged felonious assault and child endangering. Appellant conceded that she shook Ethan more than once when she noticed he was having difficulty breathing. Appellant further acknowledged that she had also shaken him in the past. When asked if she shook Ethan "hard enough to injure him," appellant answered, "I would say so."
 {¶ 23} Upon a review of the evidence, we find that the fact finder did not clearly lose its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, the second assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and WALSH, J., concur.