DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Kerwin D. Gray, appeals the April 23, 2004 judgment entry of the Lucas County Court of Common Pleas which, following a jury trial, sentenced appellant to a total of two years of imprisonment for three counts of endangering children. This appeal followed.
 {¶ 2} The facts of this case are essentially undisputed. On December 3, 2003, appellant was indicted on one count of robbery, in violation of R.C. 2911.02(A)(2), a second degree felony, two counts of endangering children, in violation of R.C.2919.22(B)(3) and (E)(3), a third degree felony, and one count of endangering children, in violation of R.C. 2919.22(A), a first degree misdemeanor. On December 9, 2003, appellant entered a not guilty plea to the charges. At the request of appellant, the unrelated robbery charge was severed from the endangering children charges. Following a jury trial, appellant was convicted of theft, a lesser included offense.
 {¶ 3} On April 13, 2004, the trial in this matter commenced and the following relevant evidence was presented. Donnie C. testified that on October 26, 2003, he was 13 years old and lived in Toledo, Lucas County, Ohio, with his brother Steve, 11, his sister Dora, 12, and his mother and stepfather, appellant. Donnie testified that appellant was angry with him for talking back to his mother and going to his aunt's house without permission. Donnie was relegated to his room where he talked to his girlfriend on the telephone. According to Donnie, appellant told him to get off the telephone and he did so. Jamar, Donnie's cousin, was also in Donnie's room and asked if he could telephone Donnie's girlfriend to get "hooked up" with her cousin. Appellant, believing that Donnie had still been on the telephone, called Donnie's girlfriend to see who she had been speaking with; the girlfriend indicated that it was Donnie.
 {¶ 4} Donnie testified that appellant then "whipped" the children with an extension cord. Donnie was hit on his arm, shoulder, and back; he showed the jury the scars he still had on his arm. Donnie testified that the beating lasted five minutes, he was hit approximately five times, and he was crying. After the incident, Donnie followed his brother and cousin who had run out of the house after being hit by appellant.
 {¶ 5} Donnie testified that the police transported him, Steve, and Jamar to the hospital. The doctor "patched" the wounds and they were all released. Donnie identified the photographs taken by police depicting the injuries the boys had received. In addition to Donnie's injuries, Jamar was hit on his back and Steve was hit across his face.
 {¶ 6} Donnie admitted that his grades were very poor and that he had been suspended for the remainder of the school year due to behavior problems. Donnie stated that the incident was the first time appellant had disciplined him with any force.
 {¶ 7} Jamar A., Donnie and Steve's cousin, testified that he was in Donnie's and Steve's bedroom when appellant told Donnie that he could not use the telephone. Jamar stated that Donnie then told Jamar to call Donnie's girlfriend to tell her that he could not talk on the telephone. According to Jamar, appellant believed that Donnie was still on the telephone despite Jamar's protestations that he was. Appellant telephoned the girlfriend and she apparently stated that she had been talking to Donnie.
 {¶ 8} At that point, appellant asked the boys to pull their pants down, they refused. Appellant left the room and returned with the extension cord. Jamar testified that Donnie was hit first, then Steve, and then Jamar was hit in the back as he was running away. Jamar also identified the photographs.
 {¶ 9} Timothy Martin lived next door to the apartment complex where the incident occurred. Martin testified that he was letting his dog outside when he heard a young person yelling for someone to call the police. Martin explained that his backyard faces the front of the apartment complex where he observed two young boys. Martin then noticed a young man walking up toward the roadway and fence that separates the properties. Martin asked him what his problem was because the boy looked very excited. Martin testified that he told the boy to come up into his front porch; he did, but then ran off when Martin's wife came out. Martin described the boy as being about 11 years old and African-American.
 {¶ 10} Martin testified that his stepson came outside and began looking for the boy. The stepson located two boys hiding behind a dumpster on the other side of Martin's property. The boys eventually went inside Martin's house. Martin testified that he wanted to get the boys into his house because "from their appearance I knew that they didn't need to go back wherever they had come from." Martin stated that the boys had "severe lacerations" on their arms, backs, and that one boy had a laceration on his face. Martin asked the boys if they wanted him to call the police, they responded affirmatively.
 {¶ 11} The police arrived and asked Martin what had occurred. Martin indicated that there were two boys in the house that "appeared to have been beaten." By that time, Donnie had also arrived. Martin identified the photographs of the boys' injuries.
 {¶ 12} Toledo Police Officers James Young and Corey Russell, each in their individual police cruisers, responded to a call for service in the 900 block of South Byrne Road. Officer Young was the first to arrive at the scene. Young testified that when he first observed the children they had "bloody marks over them." Young went to the apartment and spoke with Donnie's and Steve's mother. Young determined that the suspect was appellant; Young was unable to locate him that night. Young identified the photographs of the boys' injuries.
 {¶ 13} Similarly, Toledo Police Officer Corey Russell observed the boys' injuries and identified the photographs. Russell testified that he collected the extension cord he found on the stairwell banister. Russell identified the state's exhibit as the same extension cord.
 {¶ 14} Toledo Police Sergeant Mark Taylor testified that he photographed the boys' injuries; Taylor identified the photographs. The photographs were taken in the bathroom of Donnie's and Steve's apartment. Additionally, the October 26, 2002 medical records of Donnie and Steve were authenticated by a hospital employee and admitted into evidence.
 {¶ 15} Toledo Police Detective Kermit Quinn testified that he was the detective assigned to investigate the case. Quinn spoke with the boys, the mother, and the aunt. Quinn interviewed appellant on November 25, 2003, and the videotape of that interview was played for the jury. On the tape, appellant stated that he used an extension cord because he believed that the belt would not have an effect. Appellant stated that he did not mean for it to happen that way and that he did not intentionally hit Steve in the face.
 {¶ 16} At the conclusion of the state's case-in-chief, defense counsel made a motion for acquittal, pursuant to Crim.R. 29, as to the two felony counts of endangering children. Specifically, counsel argued that the state failed to provide sufficient evidence that appellant's conduct created a substantial risk of serious physical harm. The motion was denied. Thereafter, the jury found appellant guilty of all three counts. This appeal followed.
 {¶ 17} On appeal, appellant raises the following four assignments of error:
 {¶ 18} "I. The jury's verdict was against the manifest weight of the evidence.
 {¶ 19} "II. The trial court erred by not granting a Rule 29 acquittal.
 {¶ 20} "III. The trial court erred by not providing the jury with an instruction regarding the lesser included offense.
 {¶ 21} "IV. Appellant was denied his right to effective counsel."
 {¶ 22} Like appellant, we will combine our discussion of appellant's first two assignments of error, as they are related. Appellant's first assignment of error argues that the jury's verdict was against the manifest weight of the evidence. In appellant's second assignment of error he contends that the court erred in denying his motion for acquittal. Crim.R. 29(A) provides that the trial court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Thus, "the test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same as in reviewing a challenge based upon on the sufficiency of the evidence to support a conviction." State v.Thompson (1998), 127 Ohio App.3d 511, 525.
 {¶ 23} The Ohio Supreme Court has ruled that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "Sufficiency" pertains to a question of law as to whether the evidence is legally adequate, as to all the elements of the crime, to support a jury verdict. Id. Reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. However, under a manifest weight standard, an appellate court sits as the "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. Thompkins at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. While an appellate court may determine that a judgment is sustained by sufficient evidence, it may still conclude that the judgment is against the weight of the evidence. (Citations omitted.) Id.
 {¶ 24} As to Donnie and Steve, appellant was convicted of R.C. 2919.22(B)(3) and (E)(3). These sections provide:
 {¶ 25} "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
 {¶ 26} "* * *
 {¶ 27} "(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;
 {¶ 28} "(E) (1) Whoever violates this section is guilty of endangering children.
 {¶ 29} "* * *
 {¶ 30} "(3) If the offender violates division (B) (2), (3), or (4) of this section, except as otherwise provided in this division, endangering children is a felony of the third degree. If the violation results in serious physical harm to the child involved, or if the offender previously has been convicted of an offense under this section or of any offense involving neglect, abandonment, contributing to the delinquency of, or physical abuse of a child, endangering children is a felony of the second degree."
 {¶ 31} As to Jamar, appellant was convicted of R.C.2919.22(A) which provides, in part:
 {¶ 32} "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *."
 {¶ 33} Thus, as to Donnie and Steve, the state had to prove that there was a "substantial risk of serious physical harm" "Serious physical harm" is statutorily defined as any of the following:
 {¶ 34} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 35} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 36} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 37} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 38} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C.2901.01(A)(5).
 {¶ 39} Appellant relies on State v. Ivey (1994),98 Ohio App.3d 249, to support his argument that the jury's verdict was not supported by sufficient evidence. In Ivey, the father whipped his son with a belt because he got a detention at school. On the way home from school, the son pulled down his ski mask to hide his face from his father. The father moved to pull up the ski mask and hit his son in the left eye; the eye developed a bruise. At home, the father whipped his son's buttocks and legs with a belt. The son's hand was also swollen but he claimed that it was the result of a skateboard accident. Concluding that the evidence was insufficient to sustain the conviction the court stated:
 {¶ 40} "Although the punishment may have been excessive, the state produced no evidence that the bruises and welts caused by the strapping resulted in serious physical harm or created a substantial risk of serious physical harm. On the contrary, the evidence showed the boy went to school, without incident, the next day. There was no evidence he was in great pain or that he had trouble sitting or walking. The treating physician did not find it necessary to hospitalize the boy, order any type of painkiller (even aspirin), or to schedule another medical exam to check on his progress." Id. at 256.
 {¶ 41} After careful review of Ivey and the facts of this case, we must conclude that, viewing the evidence in a light most favorable to the prosecution, the evidence presented was sufficient to show that appellant's actions created a "substantial risk of serious physical harm." First, we believe that the Ivey facts are easily distinguishable. In Ivey, the evidence established that the father used a belt to hit his son across his buttocks and thighs. In the instant case, appellant indiscriminately hit the boys on the arm, shoulder, face, and back with an object with metal prongs at one end. Next, at appellant's trial nearly six months later, Donnie still had scars from the whipping which he showed to the jury. Finally, the photographs of all the boys were admitted into evidence. Upon review of this evidence, we must agree that the state's burden was met. Further, independently reviewing the evidence under the manifest weight standard we cannot say that the jury lost its way in finding appellant guilty as to all counts. Appellant's first and second assignments of error are not well-taken.
 {¶ 42} In his third assignment of error, appellant contends that the trial court committed plain error by not instructing the jury on the lesser included misdemeanor offense, R.C. 2919.22(A), to the felony charge of R.C. 2919.22(B). At trial, no objection was made to this omission.
 {¶ 43} Pursuant to Crim.R. 30(A), [o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires * * * stating specifically the matter objected to and the grounds of the objection." The failure to object to a jury instruction in accordance with Crim.R. 30(A) constitutes a waiver, absent plain error. State v. Underwood (1983), 3 Ohio St.3d 12, syllabus;State v. Willifiord (1990), 49 Ohio St.3d 247, 251. Crim.R. 52 provides that "plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In State v. Kennard (Dec. 8, 1995), 6th Dist. No. E-94-071, this court stated:
 {¶ 44} "The failure to give a jury instruction concerning a lesser included offense will not
 {¶ 45} generally constitute plain error when the defendant has not requested such an instruction. See State v. Minkner
(1994), 93 Ohio App.3d 127, 133. A defendant's tactical decision not to have the jury instructed as to a lesser included charge in hopes of a total acquittal, may not later be changed into judicial error. State v. Claytor (1991), 61 Ohio St.3d 234,240; State v. Greer (1988), 39 Ohio St.3d 236, 246."
 {¶ 46} In the present case, as in Kennard, appellant did not request an instruction on the lesser included misdemeanor endangering children charge. There is no evidence in the record that the omission of the instruction was anything other than trial counsel's strategy to seek a total acquittal on the felony endangering children charges. Appellant cites to a jury question asking whether they could find appellant "guilty of a lesser charge, i.e. a misdemeanor instead of a felony." However, the question does not suggest that the jurors would have been more inclined to find appellant guilty of a misdemeanor. The jurors also asked why the charge as to Jamar was a misdemeanor. Again, as a matter of trial strategy, the questions could be interpreted to mean that the jurors would be less inclined to convict appellant of the felony charges and acquit. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 47} In appellant's fourth and final assignment of error, he contends that he was denied the effective assistance of counsel. The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v. Washington (1984),466 U.S. 668, 686-687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In essence, appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
 {¶ 48} Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner. State v. Hamblin
(1988), 37 Ohio St.3d 153, 155-56. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips (1995),74 Ohio St.3d 72, 85, 1995-Ohio-171. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. Finally, reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners. Strickland,
supra at 689; State v. Keenan (1998), 81 Ohio St.3d 133, 152,1998-Ohio-459.
 {¶ 49} As discussed relative to appellant's third assignment of error, the decision not to request an instruction on the lesser included endangering children charge was tactical. We find no evidence that appellant's trial counsel failed to competently represent him at trial. Appellant's fourth assignment of error is not well-taken.
 {¶ 50} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County and for which execution is awarded. See App.R. 24.
Judgment Affirmed.
Handwork, J., Pietrykowski, J., Skow, J., Concur.