JOURNAL ENTRY and OPINION
{¶ 1} After a trial to the bench on charges of child endangering and felonious assault, defendant-appellant Todd Sommerfeld appeals from his convictions and a portion of the sentence imposed upon him.
 {¶ 2} Appellant asserts his convictions are supported by neither sufficient evidence nor the weight of the evidence. As to his sentence, appellant asserts the trial court lacked authority as a condition of community control to prohibit him from being a custodial parent for five years. Appellant lastly asserts his trial counsel provided ineffective assistance by failing to object to that condition during the sentencing hearing.
 {¶ 3} Following a review of the record, this court determines that appellant's conviction for felonious assault is unsupported by the evidence. None of his other assertions, however, has merit. Consequently, his conviction and sentence on that count are reversed; his remaining convictions and the condition of community control are affirmed.
 {¶ 4} Appellant's convictions result from interactions with his three-year-old daughter ("the victim") that took place over a weekend in late September 2002. The first occurred on Saturday.
 {¶ 5} Appellant and his wife had been invited with their five young children to an amusement park to celebrate another child's birthday. By late afternoon, when the time came to leave, the victim was tired and cranky. Because she did not want to go home, however, she began "throwing a tantrum." Appellant, embarrassed by the behavior, took charge of the victim by escorting her into the family van and closing the door.
 {¶ 6} Appellant was alone with the victim for at least five minutes before he permitted the rest of the family to enter. The victim was crying; she also was compliant when appellant ordered her into her car seat. Upon the family's return home, the victim proceeded immediately to bed.
 {¶ 7} The following morning, the family members prepared to go to church. As the victim's mother changed the child's disposable diaper for the first time since the incident, she noticed dark bruising on each side of the child's buttocks. The mother called appellant into the room and indicated the injuries. Appellant responded, "So?" In response to her apparent qualms about the vividness of the bruises, he told her no one at the church would "say anything" if they were noticed; what he did was "right" so God would "protect him." He ordered the mother to "cover her up" so they could leave.
 {¶ 8} Morning church services passed without incident. However, after the family returned home, the mother requested the victim to pick up an item from the floor. The victim "stomped her foot" and refused. Appellant at that point grabbed her, took her into the bedroom where he sat on a chair with her between his legs, bent her forward over one of them, and began to paddle her.
 {¶ 9} Appellant used a piece of wooden floorboard for this purpose. The board was approximately an inch thick, a foot-and-a-half long, and nearly four inches wide. After administering this punishment, appellant told the victim to "listen to [her] mother, go over and pick that up." The victim obeyed. When she had gone to her room for a nap, appellant stated to his wife that the victim "need[ed] to listen."
 {¶ 10} The family returned to church that evening for late services. This time, the victim could not go to the nursery as she had in the morning; instead, she was required to remain in the sanctuary with appellant and his wife. For a while the victim played quietly during the service but she began eventually to move and talk as she played.
 {¶ 11} When the victim ignored appellant's directions to be quiet, he removed her from the sanctuary. Approximately fifteen minutes later, appellant returned with her; although she obviously had been crying during the interval, she now was silent. This lasted for a short time, but soon she again was making some noise which led her mother to lead her out.
 {¶ 12} At the conclusion of the service, the family rode home. Appellant was "breathing heavily" and informed his wife "he was going to have a talk with" their daughter. When they arrived, appellant took the victim into the bedroom and, as before, began to paddle her on her buttocks with the piece of floorboard. This time, he declared to the victim that he would not stop striking her "until [she] stopped crying." The mother counted over twenty-five strikes before the punishment was finished.
 {¶ 13} By Tuesday morning, appellant's wife had resolved to leave him. She asked one of her friends to drive her and the children to her father's house. The friend, who often cared for the victim, noticed the victim flinched when approached; when the mother told her about the paddling, the friend looked at the victim's bruises. Their appearance shocked her to tears.
 {¶ 14} That evening, at the victim's grandfather's home, the family attempted to document the incident. Photographs were taken of the victim's bruised and swollen buttocks while she played on her stomach during her bath.
 {¶ 15} Appellant subsequently was indicted in this case on six counts. He was charged in counts one and three with endangering children in violation of R.C. 2919.22(B)(3) and (B)(2).[1] Count two charged appellant with felonious assault, R.C. 2903.11(A)(2). Count four charged appellant with endangering children in violation of R.C. 2919.22(B)(4). The last two counts charged appellant with endangering children in violation of R.C. 2919.22(A) and (B)(1).[2]
 {¶ 16} Prior to trial, appellant executed a jury waiver. The trial court found appellant not guilty of violating R.C.2919.22(B)(4), but guilty of the remaining charges.
 {¶ 17} When appellant's case was called for sentencing, the trial court decided that appellant was amenable to a total period of five years of community control sanctions with the following conditions: appellant was placed under the "basic supervision" of the county probation department, was ordered to abide by the department's rules and regulations and to submit to random drug testing, and, further, was "prohibited from being a custodial parent of any minor child during [the] five-year period." The journal entry of sentence warns appellant that a "violation of the terms and conditions may result in more restrictive sanctions, or a prison term of five years on each of counts one and two and eight years on count three."
 {¶ 18} Appellant appeals his convictions and a portion of the sentence ultimately imposed upon him with five assignments of error as follows:
 {¶ 19} "I. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of endangering children as charged in counts one, two, five and six.
 {¶ 20} "II. The evidence was insufficient as a matter of law to support beyond a reasonable doubt that appellant was guilty of felonious assault as charged in count three.
 {¶ 21} "III. The verdict was against the manifest weight of the evidence.
 {¶ 22} "IV. The community control sanction condition prohibiting appellant from being the custodial parent of any child for five years is void and has no effect due to it being contrary to law.
 {¶ 23} "V. Trial counsel was ineffective for not objecting to the community control sanction which prohibits appellant from being the custodial parent of any child for five years."
 {¶ 24} Appellant's first three assignments of error challenge the sufficiency and the weight of the evidence upon which each of his convictions rests; he asserts that the trial court incorrectly overruled all of his motions for acquittal. Upon a review of the record, only his second assignment of error has merit.
 {¶ 25} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 1997-Ohio-372; State v. Jenks
(1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 26} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin, supra at 175.
 {¶ 27} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to consider. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 28} In this case, the trial court concluded the evidence supported appellant's guilt on four counts of child endangering. The victim's mother testified that appellant closeted the three-year old victim in the family's van after her misbehavior in the amusement park. The following morning, the mother observed bruising on the victim's buttocks. The discoloration of the victim's skin was so pronounced that she feared to take the victim to church. Appellant, however, not only remained unperturbed but justified his role in causing the condition.
 {¶ 29} Later that same day, the victim crankily refused to pick up an object. According to the mother's testimony, appellant dealt with this behavior by taking her to a chair, restricting her movement while he sat down, taking up a heavy board, and then striking her several times on her already-bruised buttocks.
 {¶ 30} That same evening, after two episodes of the victim's inability to stay quiet during church services, appellant did not immediately correct her; rather, his response was delayed and calculated. The mother indicated he held his temper, "breathing heavily," until the family's return home.
 {¶ 31} Appellant took the victim to the chair, placed her between his legs, and administered over twenty-five blows to her buttocks area with the heavy board. Although the bruises he inflicted upon her earlier already obviously were painful, he refused to stop the blows until she ceased crying. The mother's account of these incidents was corroborated by the testimony of the other witnesses, and also was supported by the physical objects, viz., the board and the photographs, that were presented to the trial court.
 {¶ 32} From the foregoing, a reasonable trier-of-fact could conclude appellant acted in a reckless manner in his method of "discipline." State v. McGee, 79 Ohio St.3d 193, 1997-Ohio-156. His punishment of the victim in the van was an act that inflicted "physical harm," an element of the offense set forth in R.C.2919.22(B)(1), since it left her buttocks visibly bruised. Furthermore, his striking of her bruised buttocks with the board the following day, on two occasions, one of which continued for over twenty-five blows, proved the remaining charges.
 {¶ 33} By continuing to strike the victim with a heavy board on an already-vulnerable area, he created a substantial risk to her health, thus violating a duty of "care, protection or support," as set forth in R.C. 2919.22(A). State v. Amerson
(July 5, 2001), Cuyahoga App. No. 78235. Moreover, he administered a "physical disciplinary measure" of over twenty-five blows with a heavy board on a three-year old, simply for the child's inability to remain quiet during a long church service, which clearly was excessive, as required by R.C.2919.22(B)(3). Such a number of blows with such an instrument on already-bruised skin constituted cruel abuse of the child, R.C.2919.22(B)(2). State v. Dillard (July 23, 1999), Pike App. No. 98 CA 627; cf. State v. Ivey (1994), 98 Ohio App.3d 249.
 {¶ 34} Finally, from the evidence presented, the trial court acted within its prerogative to disbelieve appellant's characterization of his actions as mere "corporal punishment."State v. Jordan (Nov. 13, 1997), Cuyahoga App. No. 70783. The trial court noted that three-year olds ordinarily have a high activity level but are physically vulnerable; correction of the victim's behavior under the circumstances presented did not require the severity of the beatings inflicted upon her by appellant.
 {¶ 35} Consequently, appellant's convictions for child endangering must be affirmed.
 {¶ 36} However, this court cannot conclude that appellant's conviction for felonious assault was supported by sufficient evidence. The trial court found the instrument appellant used constituted a "deadly weapon" pursuant to R.C. 2903.11(A)(2). In conjunction with the facts of this case, observation of the board does not support such a conclusion.
 {¶ 37} A "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). The statute is written in the conjunctive. Therefore, the item must meet both parts of the definition: it must not only be capable of inflicting death, it also must beeither "designed for use as a weapon," or possessed, carried, or "used" as a weapon. The word "weapon" is not otherwise statutorily defined, but commonly means an item that is used in "combat."
 {¶ 38} In this case, although the board may be viewed as something that is capable of inflicting death, it was not used
by appellant in a way that meets the remainder of the statutory definition. The way in which the item is employed is thus the key. Unlike the defendants in State v. DeBoe (1997),62 Ohio App.3d 192 and State v. Pope (Oct. 4, 1990), Logan App. No. 8-89-19, the cases relied upon by the state, appellant did notwield it as a weapon. He did not seek to fight the victim, as did the defendants in DeBoe and Pope. Rather, he utilized the board as a terribly inappropriate and misguided means toredirect his daughter's behavior.
 {¶ 39} In view of appellant's awareness that the victim already had visible bruises on her buttocks, his use of the board supports, at most, a conviction for assault in violation of R.C.2903.13(A). Appellant's conviction for felonious assault, therefore, is reversed.
 {¶ 40} In his fourth assignment of error, appellant challenges a portion of his sentence. He asserts the trial court exceeded its authority when it prohibited him from being a custodial parent for the term of his community control. This court disagrees.
 {¶ 41} R.C. 2929.15(A)(1) and 2929.17 authorize the trial court to impose as a sentence the sanction of a period of nonresidential, conditional community control. The conditions the trial court attaches to the period may be ones that the court deems "appropriate." R.C. 2929.15(A)(1).
 {¶ 42} While appropriateness is traditionally a matter left to the trial court's discretion, the court should ensure the condition does not unnecessarily impinge on a defendant's constitutional rights and has a relationship to the interests of justice. State v. Maynard (1988), 47 Ohio App.3d 76; State v.Livingston (1976), 53 Ohio App.2d 195. A relationship exists when the condition is related to the crime for which the defendant was convicted, germane to the conduct which is criminal, connected with the purpose of rehabilitation, and not overbroad. State v. Jones (1990), 49 Ohio St.3d 51, cited with approval, State v. Talty, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶11-13; State v. Conkle (1998), 129 Ohio App.3d 177.
 {¶ 43} Appellant initially argues his constitutional rights are violated by the prohibition the trial court imposed. This argument is unpersuasive. Appellant is not restricted from exercising one of his recognized fundamental rights, such as the rights to vote, to travel between states, or to procreate. SeeState v. Talty, supra at ¶ 8, State v. Williams,88 Ohio St.3d 513, 2003-Ohio-428. Moreover, appellant's privilege to act as a father is only moderately, rather than completely, restricted. See, e.g., Lakewood v. Dorton, Cuyahoga App. No. 81043, 2003-Ohio-1719; cf., State v. Talty, supra; State v.Sturgeon (2000), 138 Ohio App.3d 882.
 {¶ 44} Next, appellant argues the prohibition is unreasonable. This argument also is unpersuasive. Precluding appellant for a time from taking on the responsibility of child custodial care is both related and germane to the crime of child endangering. Moreover, the trial court stated its intent was to ensure appellant had time to "rehabilitate" his parental behavior over the period of community control. Id.; cf., State v. Talty,
supra at ¶ 19-21; State v. Richard (1996), 113 Ohio App.3d 141. The trial court's comments thus indicate appellant retains the ability to persuade the trial court to reconsider the prohibition during the period by taking steps, such as successfully completing parenting classes, that demonstrate his rehabilitation.
 {¶ 45} Since the trial court acted within its discretion in choosing to limit appellant's custodial authority over any potential victims of his physically injurious parental style, appellant's challenge is rejected. Lakewood v. Hartman (1999),86 Ohio St.3d 275. Appellant's fourth assignment of error is also overruled.
 {¶ 46} Appellant finally asserts his trial counsel provided ineffective assistance. His claim, however, is based solely on counsel's failure to object to the foregoing community control condition. In view of this court's disposition of appellant's fourth assignment of error, appellant cannot meet his burden with respect to this claim. State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 47} Counsel is not deemed constitutionally deficient merely for a failure to raise a single claim which lacks a reasonable chance of success, especially in a case in which counsel successfully convinced the court a prison sentence for appellant was inappropriate. State v. Smith (1985),17 Ohio St.3d 98.
 {¶ 48} Accordingly, appellant's first, third, fourth and fifth assignments of error are overruled; appellant's second assignment of error is sustained.
 {¶ 49} Appellant's convictions for child endangering and the condition of community control imposed by the trial court are affirmed. Appellant's conviction for felonious assault is reversed, and this case is remanded for further proceedings consistent with the foregoing disposition of this appeal.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J. Concurs McMonagle, P.J. Concurs in JudgmentOnly.
[1] These subsections prohibit a person from "cruelly" abusing a child and from administering physical discipline and corporal punishment which is "excessive under the circumstances."
[2] These subsections prohibit a "parent" from creating a "substantial risk to the health or safety" of his child "by violating a duty of care, protection or support," and a "person" from abusing a child.