JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Timothy Callahan appeals from his conviction in the Cleveland Municipal Court for the misdemeanor offense of child endangering.
 {¶ 2} Appellant argues in his three assignments of error that the trial court applied an improper standard of proof with respect to the elements of the offense, thus, his conviction is unsupported by either sufficient evidence or the weight of the evidence.
 {¶ 3} Upon a review of the record, however, this court disagrees with appellant's arguments. Consequently, his conviction is affirmed.
 {¶ 4} The record reflects appellant's conviction is based upon an incident that the victim, his eleven-year-old son, testified occurred on the evening of Tuesday, March 8, 2005. According to the victim, appellant called him to account for a report that he had taken a game to school that day. The victim had been disciplined previously for such activity.
 {¶ 5} The earlier discipline involved either requiring him to perform extra household duties or the withdrawal of some of the victim's privileges. This time, after the victim acknowledged his infraction, appellant wrapped a belt around his hand and "whooped" the victim at least five times on his arms and shoulders. The victim returned to his room crying.
 {¶ 6} The following weekend, the victim returned to his mother's house. The victim came into his mother's room on Saturday, March 12, 2005 "with his shirt off and asked [her] to brush the hair off his back." His mother "noticed bruising on both arms, his back and his chest." Reluctantly, the victim stated appellant "whooped" him "in a rage" several days previously for committing an infraction. When the mother confronted appellant, he did not deny inflicting the bruises.
 {¶ 7} The injuries sustained by the victim were noticeable enough even several days after the incident that the mother drove the victim to the hospital for medical treatment. Hospital personnel, in turn, believed the injuries required that the police be notified.
 {¶ 8} Carl Campbell, of the University Hospital's security force, was the first officer to respond; he thereupon took photographs of what he described as the victim's "deep welt marks." Cleveland Police Officer John Ziesel also responded to the hospital. According to his description, the victim had "deep, black and blue marks and red swelling on his left arm, going down to his forearm," the victim also had "deep bruising on his right arm," and "a line [of bruising] on his right shoulder blade going down the back."
 {¶ 9} By that time, the physician could prescribe only pain relievers and ice for treatment of the victim's injuries. The victim testified, however, that pain due to the bruising prevented him for some time afterward from raising his arms.
 {¶ 10} On March 20, 2005 a complaint was filed against appellant that charged him with one count of endangering children in violation of Cleveland Codified Ordinance ("CCO") 609.04, a misdemeanor of the first degree. The complaint charged appellant with violating both sections of the ordinance, i.e., "recklessly" creating a "substantial risk" to the child's health, and/or, the "abuse" of a child. (Emphasis added.)
 {¶ 11} Although subsequently the city provided a Bill of Particulars that charged appellant committed a violation of only the first subsection, at the commencement of trial on November 16, 2005, the city prosecutor stated during opening argument that the evidence would "show that [appellant] did excessively abuse his child on this particular day." Defense counsel raised no objection to this statement, either at that time or during later argument to the court.
 {¶ 12} The prosecutor presented the testimony of the victim, his mother, and the two police officers; the city also introduced into evidence nine photographs of the victim's injuries taken by Campbell. After the trial court overruled his motion for acquittal, appellant testified in his own behalf and also presented his live-in girlfriend as a witness.
 {¶ 13} Appellant indicated most of the victim's bruises had been sustained in a schoolyard altercation. Appellant admitted, however, that he had "disciplined" the victim, that he could be "heavy-handed," and that he struck the victim with a belt approximately six or seven times, to the point at which the victim "cried."
 {¶ 14} The trial court ultimately found appellant guilty of the charge. Appellant was ordered to pay a fine and to complete one year of conditional active probation.
 {¶ 15} Appellant filed a timely appeal of his conviction. He presents the following three assignments of error for review.
 {¶ 16} "I. Mr. Callahan was denied due process of law when the trial court decided this case under the misapprehension that (1) the intent element could be satisfied by less than recklessness, and (2) "substantial risk to the health or safety of the child" simply meant a "risk of being hurt."
 {¶ 17} "II. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Callahan was guilty of child endangering.
 {¶ 18} "III. The verdict was against the manifest weight of the evidence."
 {¶ 19} Appellant argues in his assignments of error that the trial court determined his guilt by applying an improper standard of proof with respect to two necessary elements of the offense. He contends on this basis that the trial court should have granted his motions for acquittal, and, additionally, that the manifest weight of the evidence fails to support his conviction.
 {¶ 20} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 1997-Ohio-372; State v. Jenks
(1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 21} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin, supra at 175.
 {¶ 22} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to consider. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 23} The trial court in this case determined the evidence supported the city's charge against appellant under CCO 609.04(a), viz., that he "did recklessly create a substantial risk to the health of" his son "by violating a duty of care, protection or support." The record reflects the trial court provided some perhaps careless commentary when rendering its verdict. Nevertheless, the record also supports a conclusion the court remained aware throughout the proceedings of the city's burden of proof as to this charge.
 {¶ 24} First, the complaint itself alleged the requisite element that the appellant acted "recklessly." State v. McGee,79 Ohio St.3d 193, 1997-Ohio-156. Thus, the trial court in this case did not labor under the same misapprehension that plagued the trial and appellate courts in McGee.
 {¶ 25} Second, during defense counsel's cross-examination of the mother, the court admonished counsel at one point that he should focus his questions; the issue was "whether or not what happened was excessive or reckless * * *."
 {¶ 26} Third, the trial court also commented when rendering its verdict that the photographs of the victim's injuries were sufficient to prove the punishment appellant administered created a "substantial" risk of harm. State v. Gray, Lucas App. No. L-04-1126, 2005-Ohio-3861. The trial court stated the bruising of the victim's "face, shoulders, arms, [and] chest" appeared "inhumane" and "brutal."
 {¶ 27} The witnesses who observed the victim's injuries believed they were "severe;" severe enough that his mother took him to the hospital, and the police officers took photographs of them. The victim testified that the injuries prevented him from raising his arms; he simply stopped doing that. Id. ¶ 41; cf.,State v. Ivey (1994), 98 Ohio App. 3d 249.
 {¶ 28} Furthermore, according to the trial court, "the * * * pictures [were] worth a thousand words" in establishing the elements of the offense, because they showed what appellant did was "over the line" of simple negligence. Since the photographs are not included in the record on appeal, this court must defer to the factfinder's judgment in this matter.
 {¶ 29} Thus, from the testimony and the evidence presented, "a reasonable factfinder could conclude appellant acted in a reckless manner in his method of `discipline.' * * * [and b]y continuing to strike the victim * * * on a * * * vulnerable area, he created a substantial risk to [the victim's] health, thus violating a duty of `care, protection or support,'" sufficient to support a conviction for child endangering. State v.Sommerfeld, Cuyahoga App. No. 84154, 2004-Ohio-6101, ¶¶ 32-33;State v. Gray, supra.
 {¶ 30} The trial court also "acted within its prerogative to disbelieve appellant's characterization of his actions" as mere discipline. State v. Sommerfeld, supra, ¶ 34. The testimony of the victim and his mother was consistent, and was supported by the testimony of the two police officers.
 {¶ 31} Appellant's girlfriend, however, gave testimony that differed from appellant's in some key respects. Notably, she described the blows administered as a "spanking," and stated the victim never cried afterward. Appellant, on the other hand, admitted striking the victim "five to six, seven maybe" times "with a belt," admitted he could be "heavy handed" at times, and admitted the victim "cried a little bit" after the incident.
 {¶ 32} In reaching its verdict, the trial court specifically referred to the conflicting testimony, and indicated that it did not believe appellant's version, especially after viewing the photographs of the victim's injuries. Although the trial court "editorialize[d]" by stating that "the statute doesn't say anything about intent * * * didn't say recklessly * * * didn't even say [the child] had to be hurt;" the court indicated it remained cognizant of the required standard of proof. The evidence showed appellant's behavior created a substantial risk of harm; the "pictures [were] worth a thousand words," they demonstrated appellant's actions were "over the line," into the reckless risk of substantial harm.
 {¶ 33} Therefore, appellant's conviction is supported by both sufficient evidence and the manifest weight of the evidence.Cleveland v. Kazmaier, Cuyahoga App. No. 84290, 2004-Ohio-6420;State v. Sommerfeld, supra.
 {¶ 34} Accordingly, appellant's assignments of error are overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. concurs
Corrigan, J. dissents (see attached dissenting opinion)