DECISION AND JUDGMENT ENTRY
{¶ 1} Keith A. McNichols appeals the Hocking County Municipal Court's judgment convicting him of domestic violence. We read McNichols's assignments of error as challenging the sufficiency and the weight of the evidence. Sufficient evidence supports McNichols's conviction since, viewed in the light most favorable to the prosecution, the evidence could have convinced a reasonable trier of fact that the essential elements of domestic violence were met beyond a reasonable doubt. Moreover, the weight of the evidence supports McNichols's conviction since we cannot say that the trial court "clearly lost its way and created a manifest miscarriage of justice."
 {¶ 2} In January 2002, McNichols lived with his girlfriend, Mary Quigley, and their eleven-year-old daughter, D.B. Quigley, who was suffering from a migraine headache, told her daughter to put her slippers on and to leave her alone because she had a headache. When D.B. refused, McNichols told D.B. to listen to her mother and to go to her room. McNichols then "came up" on D.B., grabbed her by the arm, shook her and pushed her to the floor. D.B. testified that although her dad shook and pushed her she faked the fall and was not hurt. Quigley testified that McNichols shook and pushed D.B. but "he didn't hurt her and he didn't do it very hard." However, Quigley also testified that after McNichols pushed D.B. she told him not to "grab her child" and McNichols replied "I'm going to kill somebody." McNichols first testified that he did not remember shaking D.B. and that he did not "recall pushing her hard enough to knock her to the floor." McNichols also claims that D.B. has a history of falling to the floor "when she gets mad." However, on cross-examination, McNichols stated, "I don't recall pushing her at all."
 {¶ 3} When Quigley testified, she admitted that she called 911 after the incident. However, she explained that McNichols told her and D.B. to leave the house and since she had no car she called 911 for a ride to her mother's house. Deputy Justin Sartori, who responded to Quigley's 911 "domestic call", testified that when he arrived Quigley was at the end of her driveway, upset, crying and shaking. Further, Deputy Sartori testified Quigley told him there was an argument at the house and that McNichols had pushed her daughter down. He did not mention being asked for a ride to Quigley's mother's house. Moreover, Deputy Sartori observed no visible signs of a disturbance or an injury. But when he questioned D.B., she stated that there had been an argument and that her dad pushed her down. D.B. did not tell Deputy Sartori that she faked the fall. Sartori arrested McNichols and charged him with two counts of domestic violence, one count involving his daughter and one count involving Quigley.
 {¶ 4} McNichols elected to waive a jury trial and the court found him guilty of domestic violence, in violation of R.C. 2919.25(A), because of the conduct involving his daughter. However, the court found him not guilty of the charge involving Quigley. The court sentenced McNichols to one hundred eighty days in jail and a $250 fine but suspended one hundred seventy days of the sentence and $100 of the fine. McNichols appealed assigning the following errors. FIRST ASSIGNMENT OF ERROR — The appellant asserts that the decision of guilty to the charge of domestic violence is against the manifest weight of the evidence; when all three eye witnesses [sic] testified that there was no assault but, just a father exercising parental control by grabbing his daughter's shoulder and directing her to her room. SECOND ASSIGNMENT OF ERROR — The state failed to establish any criminal intent, either reckless or knowingly.
 {¶ 5} We read McNichols's second assignment of error as arguing that his conviction is against the sufficiency of the evidence. Therefore, we will address both of his assignments of error together since they involve the related concepts of the sufficiency and the weight of the evidence. McNichols argues that his conduct cannot rise to domestic violence because it was only a parent's reasonable discipline of his daughter and cannot support his conviction for domestic violence. We do not agree.
 {¶ 6} Our function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, could convince the average mind of the defendant's guilt beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. We must inquire whether the evidence, if viewed in the light most favorable to the prosecution, could convince any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. Id. citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 7} The Hocking County Municipal Court convicted McNichols of domestic violence under R.C. 2919.25(A). R.C. 2919.25(A) states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.01(A)(3) defines physical harm as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Therefore, actual physical harm is not required for a successful conviction because the domestic violence statute expressly criminalizes both an attempt and a completed offense. R.C. 2901.22(B) states, "[a] person, acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." The trier of facts may properly infer a defendant's mental state from the surrounding circumstances. State v. Logan (1979), 60 Ohio St.2d 126, 131,397 N.E.2d 1345. Moreover, the Ohio Supreme Court has stated that to act "knowingly, a person need not act with deliberate intent." State v.Wenger (1979), 58 Ohio St.2d 336, 339, 390 N.E.2d 801, n. 3.
 {¶ 8} R.C. 2919.25(A) does not prohibit a parent from reasonably disciplining his child. State v. Suchomski (1991), 58 Ohio St.3d 74, 75,567 N.E.2d 1304. Corporal punishment is not per se unreasonable. However, reasonable discipline does not include cruelty, excessive pain or suffering, or any risk of serious physical harm. When reviewing whether conduct is reasonable, we must look to the totality of the surrounding circumstances. State v. Jones (2000), 140 Ohio App.3d 422,429, 747 N.E.2d 891. Relevant factors include "the child's age, the child's behavior that led to the parent's action, the child's response to noncorporal punishment, and the location and severity of the punishment."Id. Moreover, we must examine "the parent's state of mind while administering the discipline." Id.
 {¶ 9} Here, Quigley, D.B. and even McNichols testified that he grabbed D.B. and pushed her. Quigley and D.B. testified that McNichols also shook his daughter. Moreover, immediately following the incident, Quigley and D.B. told Deputy Sartori that there was an argument and McNichols pushed D.B. down. Finally, Quigley testified that after McNichols pushed D.B. down, he stated, "I'm going to kill somebody."
 {¶ 10} McNichols clings to the argument that D.B. sustained no visible injury. However, visible or actual injury is not required since the statute criminalizes attempted domestic violence. See R.C. 2919.25(A). McNichols also contends that all of the eyewitnesses testified that no assault occurred but that McNichols was merely attempting to discipline his daughter. In fact, no one testified that an assault did not occur, nor did anyone, besides McNichols, testify that they thought McNichols was only trying to discipline his daughter. Viewed in the light most favorable to the prosecution, a rational trier of fact could conclude that, an eleven-year-old girl would probably be injured when she is shaken and pushed down by her father. Moreover, a reasonable trier of fact could conclude that because of his statement that he was going to kill somebody he was angry and intended to harm his daughter. Therefore, sufficient evidence supports the trial court's guilty verdict.
 {¶ 11} Next, we address the weight of the evidence. The legal concepts of sufficiency and weight of the evidence are different. Statev. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Therefore, even though we have already addressed the sufficiency of the evidence, it is still necessary to address the weight of the evidence. See State v. Robinson (1955), 162 Ohio St. 486, 487,124 N.E.2d 148. Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. Thompkins, 78 Ohio St.3d at 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether the court clearly lost its way and created a manifest miscarriage of justice. Id. quoting State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the court clearly lost its way, we must reverse the conviction and order a new trial. Id. We will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy, 84 Ohio St.3d 180, 193-94,1998-Ohio-533, 702 N.E.2d 866. We are also mindful that the trier of facts is in the best position to make credibility determinations. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 12} Here, an eleven-year-old girl refused to wear her slippers, go to her room and argued with her parents. In response, McNichols grabbed her by the arm, shook her and pushed her to the floor. Moreover, immediately following these actions McNichols stated, "I'm going to kill somebody." McNichols's statement indicates that he attempted to "discipline" his daughter while he was angry enough to "kill somebody." We cannot say that the trial court clearly lost its way because the state introduced substantial evidence to show that McNichols "knowingly * * * attempted to cause physical harm" to his daughter. Therefore, the court's finding that his attempted discipline was not reasonable is supported by the weight of the evidence. Both of McNichols's assignments of error are overruled.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Evans, J. Concur in Judgment and Opinion.