OPINION *Page 2 
{¶ 1} Defendant-appellant Clifford Cantwell appeals his conviction and sentence from the Licking County Municipal Court on one count of domestic violence. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 24, 2007, a complaint was filed in the Licking County Municipal Court alleging that appellant had committed the offense of domestic violence in violation of R.C. 2919.25, a misdemeanor of the first degree. At his arraignment on the same date, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, a jury trial commenced on May 10, 2007. The following testimony was adduced at trial.
 {¶ 4} Appellant is the father of Hailyn Ross and has visitation with her every other weekend. On January 23, 2007, appellant dropped off Hailyn, who was four (4) years old at the time, at her maternal grandmother Darlene Ross's house after visitation. Appellant, when dropping Hailyn off, did not tell Ross that Hailyn had given him any problem during visitation. As Ross was assisting Hailyn in the bathroom, she noticed bruising on Hailyn's buttocks. Ross then contacted her daughter, Hailyn's mother, and, after the police were contacted, the two went to the police station where photographs were taken of Hailyn's injuries. Darlene Ross testified that Hailyn did not have any injuries prior to visitation with appellant.
 {¶ 5} Amanda Ross, Hailyn's mother, testified at trial that the bruises on Hailyn's buttocks were not present before visitation with appellant. She further testified that after seeing the bruises, she called appellant who admitting whipping Hailyn and *Page 3 
told her that "if I had to do it again I would. That he would do it again if he had . . . if her behavior was like it was that he would do it again." Transcript at 46. According to Darlene Ross, appellant did not mention any problems with Hailyn's behavior when he dropped Hailyn off. When Amanda Ross questioned appellant about Hailyn's behavior, he told her that Hailyn had kicked him and cussed at him.
 {¶ 6} The next witness to testify at trial was Patrolman Jerry Smith of the Utica Police Department. Patrolman Smith testified that after Hailyn came into the police station with her mother and grandmother on January 23, 2007, photographs were taken of Hailyn's injuries. Patrolman Smith then went to appellant's address along with Captain John Blackburn. Appellant gave the officers the belt that he had disciplined his daughter with and then the three went to the police station. Appellant, in a written statement to the police, which was admitted as Plaintiff's Exhibit 4, stated that he "used a belt to discipline my daughter and give . . . I gave her three swats on her butt." Patrolman Smith testified that appellant, when shown the photographs taken of Hailyn's injuries, "stated that he didn't realize that he spanked her that hard . . ." Transcript at 59. On cross-examination, Patrolman Smith testified that appellant, when shown the photos, said that he did not notice any bruising on Hailyn after spanking her.
 {¶ 7} Captain John Blackburn of the Utica Police Department testified that when he arrived at appellant's trailer with Patrolman Smith, he told appellant that a complaint had been filed against him involving his daughter and that appellant needed to come down to the police station. In response, appellant admitting hitting his daughter three times with a belt and asked Captain Blackburn if he wanted the belt. According to the captain, appellant then went and retrieved the belt. According to Captain Blackburn, *Page 4 
appellant, when shown the photographs, "said right then that he didn't do that." Transcript at 62.
 {¶ 8} Melissa Terry, a child abuse investigator with Licking County Job and Family Services, testified that she met with Hailyn Ross on January 24, 2007, and took photographs of Hailyn's injuries. The photographs, which showed bruising to Hailyn's buttocks and leg, were admitted at trial.
 {¶ 9} After the State rested, Brandy Wells testified on behalf of appellant. Wells testified that appellant was her fianc É and that the two had been dating for two and a half (2 ½) years. Wells testified that she lived with appellant and was present on the night in question when Hailyn was acting up. According to Wells, Hailyn was crying, screaming and kicking for approximately one hour because she did not want to go to bed. Wells further testified that this behavior was unusual for Hailyn. The following testimony was adduced when Wells was asked whether she saw appellant discipline Hailyn that night:
 {¶ 10} "A. Yes.
 {¶ 11} "Q. O.K. and what types of discipline did you see him attempt to use that night?
 {¶ 12} "A. Well he told her to go to bed, he tried to stand her in a corner, um and he told her he was going to spank her and then he spanked her.
 {¶ 13} "Q. Do you know how many times he told her he was going to spank her before he spanked her if you know?
 {¶ 14} "A. Um, I think he only told her like once or twice. I mean it wasn't you know continuous. He just said go to bed or I am going to spank you. *Page 5 
 {¶ 15} "Q. O.K. and that was the last discipline you saw him use before he spanked her?
 {¶ 16} "A. Last resort, yes.
 {¶ 17} "Q. Did you actually see him spank her?
 {¶ 18} "A. I seen him but I was kind of standing off to the side so I mean I wasn't staring at him, you know, watching him for every second.
 {¶ 19} "Q. Did he use his hand or something else?
 {¶ 20} "A. He used the belt." Transcript at 74.
 {¶ 21} Wells further testified that appellant did not "whoop" Hailyn hard and that she never saw him raise his arm above his shoulder when hitting Hailyn with a belt while standing up. Wells also testified that she did not see any marks on Hailyn. According to Wells, Hailyn appeared fine the next morning.
 {¶ 22} Appellant testified that he had visitation with Hailyn on the weekend of January 20, 2007, and that Hailyn would not listen to him or do what she was told. He testified that Hailyn would not go to bed and that he tried to make her stand in a corner to no avail. Appellant testified as follows when asked to describe what happened:
 {¶ 23} "A. Well she wasn't listening and she wouldn't do what she was told to do and I tried numerous times to get her to go to sleep. I tried talking to her and that didn't work. I tried standing her in the corner — that didn't work. Everything I tried did not work and I told her I was going to spank her with the belt and she kept doing what she was doing before — cussing and kicking me, being completely obnoxious and I told her I was going to spank her and she got a spanking.
 {¶ 24} "Q. Was that sort of behavior unusual for Hailyn? *Page 6 
 {¶ 25} "A. Yes it was. She has never acted like that before.
 {¶ 26} "Q. Had anything happened that weekend that you think might have led to that?
 {¶ 27} "A. Nope." Transcript at 85-86.
 {¶ 28} According to appellant, he tried to use other methods of discipline for approximately one hour before resorting to spanking. When asked, on cross-examination, whether he told Hailyn's mother or grandmother about the problem with Hailyn when he dropped her off, appellant responded, "No because I took care of it." Transcript at 94. Appellant also testified that he was kneeling when he spanked his daughter rather than standing up.
 {¶ 29} At the conclusion of the evidence and the end of deliberations, the jury found appellant guilty of domestic violence. Pursuant to a Judgment Entry filed on May 10, 2007, appellant was ordered to serve ninety (90) days in jail, with eighty-nine (89) of the days suspended. Appellant also was placed on probation and fined $500.00. The trial court suspended $300.00 of the fine.
 {¶ 30} Appellant now raises the following assignment of error on appeal:
 {¶ 31} "THE CONVICTION OF THE DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 7 
 I {¶ 32} Appellant, in his sole assignment of error, argues that his conviction for domestic violence was against the manifest weight of the evidence. We disagree.
 {¶ 33} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541 citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 34} Appellant, in the case sub judice, was convicted of domestic violence in violation of R.C. 2919.25. Such section states, in relevant part, as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member." As noted by the court in State v. Jones (2000), 140 Ohio App.3d 422, 747 N.E.2d 891 "In reviewing the foregoing statute [R.C. 2919.25] in the context of a parent-child relationship, the Supreme Court of Ohio indicated that the legislature did not intend to prohibit `proper and reasonable parental discipline' but, rather, incidents of corporal punishment that cause substantial physical injuries. State v. Suchomski (1991), *Page 8 58 Ohio St.3d 74, 567 N.E.2d 1304; State v. Hicks (1993),88 Ohio App.3d 515, 624 N.E.2d 332; cf. State v. Ivey (1994), 98 Ohio App.3d 249,648 N.E.2d 519 (construing R.C. 2919.22, endangering children)." Id at 428-429.
 {¶ 35} Appellant, in the case sub judice, does not dispute that Hailyn had bruising to her buttocks or that he administered punishment to her that was consistent with her injuries. Rather, he argues that the discipline he administered to her was reasonable.
 {¶ 36} In considering whether appellant's conviction is against the weight of the evidence, this Court must consider whether appellant sustained his burden of proof with regard to his affirmative defense that he used only "proper and reasonable parental discipline." State v.Hauenstein (1997), 121 Ohio App.3d 511, 700 N.E.2d 378; State v.Hart (1996), 110 Ohio App.3d 250, 673 N.E.2d 992. Appellant had to establish by a preponderance of the evidence that he used such discipline. Id. "Proper" has been defined as "suitable or appropriate" and "reasonable" defined as "not extreme or excessive." State v.Hicks (1993), 88 Ohio App.3d 515, 520, 624 N.E.2d 332, 335.
 {¶ 37} Upon examination of the entire record, we cannot say that the jury, as trier of fact, clearly lost its way and created a manifest miscarriage of justice in convicting appellant of domestic violence. The record reveals that appellant struck his daughter, who was four (4) years old at the time, three (3) times on the buttocks with a belt, leaving bruises on her buttocks and legs. It was undisputed that appellant's daughter had not been a discipline problem in the past and that her behavior on the night in question was unusual. Appellant, when shown photographs of his daughter's injuries, stated that he did not realize that he had hit his daughter that hard. *Page 9 
 {¶ 38} Based on the foregoing, we find appellant's conviction was not against the manifest weight of the evidence. Appellant's sole assignment of error is, therefore, overruled.
 {¶ 39} Accordingly, the judgment of the Licking County Municipal Court is affirmed.
Edwards, J. Gwin, P.J. and Delaney, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1