[Cite as *State v. Ford*, 2020-Ohio-4298.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 109087

    v.                                    :

ISRAEL FORD,                            :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 3, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-638091-B

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney,
and Caroline Nelson, Assistant Prosecuting Attorney, *for
appellee.*

Friedman & Gilbert and Mary Catherine Corrigan, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant Israel Ford ("Ford") appeals from a judgment of the
Cuyahoga County Court of Common Pleas that convicted him of domestic violence
after a bench trial. The domestic violence conviction stemmed from an incident

where Ford struck his 17-year-old stepdaughter K.C. with a belt, leaving bruises visible three days after the incident. Ford claims the record does not support his conviction of domestic violence because he was administering parental discipline to punish his stepdaughter's misbehavior. While the courts in Ohio have recognized proper and reasonable parental discipline as an affirmative defense to a charge of domestic violence, we conclude that the trial court, in rejecting Ford's claim that his conduct constituted proper and reasonable parental discipline, did not clearly lose its way and create a manifest miscarriage of justice in finding Ford guilty of domestic violence. We therefore affirm Ford's conviction.

**Procedural History**

{¶ 2} Ford and his wife Lydia Ford were jointly indicted in a 15-count indictment. The first 11 counts charged them with robbery, assault, and other related offenses, which stemmed from an unrelated incident involving a different victim, Latesha McFarland.

{¶ 3} Counts 12, 13, 14, and 15 stemmed from the subject incident on January 15, 2018, where Ford struck his stepdaughter with a belt purportedly as a parental discipline to punish her for her misbehavior. In Count 12, Ford and his wife were jointly charged with endangering children as defined in R.C. 2919.22(A), a third-degree felony; in Counts 13 and 14, Ford alone was charged with endangering children as defined in R.C. 2919.22(B)(1) and (B)(3), respectively, both a second-degree felony; and in Count 15, Ford alone was charged with domestic violence as defined in R.C. 2919.25(A).

**{¶ 4}** Regarding Counts 1 to 11, Ford and his wife pleaded guilty to several offenses charged in the indictment pursuant to a plea agreement. However, they opted for a bench trial regarding Counts 12 to 15.

**Trial Testimony**

**{¶ 5}** At trial, the state presented the testimony of K.C.; her father; Latesha McFarland (the victim of the first 11 counts in the indictment) to whom the Fords revealed the belt incident; and two police officers. Lydia Ford called one witness, an employee from the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Ford did not call any witnesses.

**{¶ 6}** K.C., 17 at the time of the incident, provided extensive testimony during direct and cross-examination. She acknowledged that her stepfather and her mother had strict rules for her and expected her to "behave like a Christian." She would get "whooped" if she violated the rules — the punishment involved lying across the bed, taking her pants off, and being struck with a belt. Her mother was usually the one administering the punishment. A few days before the January 15, 2018 incident, Ford and K.C.'s mother Lydia inspected K.C.'s cell phone and discovered highly inappropriate content posted on her Snapchat account, which upset them. However, nothing happened on that day.

**{¶ 7}** On January 15, 2018, her mother "whooped" her with a belt as a punishment for her misbehavior in the Snapchat incident. After being "whooped" by her mother, to "get the heat off" her, K.C. told her mother that Ford had been sending text messages to his ex-wife. This infuriated Ford, and he told K.C. to go

upstairs to get ready for a "whooping." When K.C. refused to go upstairs for the punishment, Ford grabbed her by the arm and pushed her down on the floor in the living room, and held her down with his knee on her neck. She fought him off and picked up a knife from the kitchen but soon put down the knife. Ford then pushed her around. Tired of fighting with Ford, K.C. went upstairs eventually and was struck by Ford with a belt. Afterwards, Ford told her she was not to go to school the next day because she was "not going to school to be telling [her] teachers about this." When asked if she received any "injuries" from the whooping, K.C. testified that she would not describe herself as "injured" but she did have bruises.

{¶ 8} Three days after the belt incident, on January 18, 2018, K.C.'s aunt took her to the hospital and the police to make a report. K.C. provided a statement to the police, and a police officer took pictures of her bruises. The pictures were admitted as exhibits, which showed bruises on her shoulder, arm, legs, and thigh. K.C. also read the statement she provided to the police, which contained more details regarding the incident. The statement reflects that after she told her mother something about her stepfather, he told her to go upstairs to be "whooped." When she refused, he put her on the ground and choked her with his knee on her neck. She ran to the kitchen to grab a knife to defend herself, but put it down in the sink. Her stepfather then slammed her into the wall of the kitchen and then threw her around in the living room. When she finally went upstairs, she resisted being "whooped." He then started beating her all over with a belt and slammed her to the

ground. He beat her all over her body and pulled her by her hair to the ground. After that, she laid down and let him "whoop" her.

**{¶ 9}** K.C.'s father testified that she called him after the incident, crying and upset, and told him what had happened. He saw her the next day and observed what appeared to be fresh bruises on her lower body, back, shoulders, and neck.

**{¶ 10}** Latesha McFarland, who knew the Fords and was the victim in the first 11 counts of the indictment, testified that they told her that they "jumped [K.C.] and beat her up really bad like she was a girl on the street."

**{¶ 11}** Officer Kyle Nyman, a police officer of the Euclid Police Department, testified that he took a statement from K.C. regarding the incident. He observed some bruises on her body but she refused an offer of medical attention. He reported the incident to CCDCFS. Lieutenant Michael Knack, also of the Euclid Police Department, testified that the police department did not take any further action on K.C.'s report until it was investigating the case involving McFarland.

**{¶ 12}** Ford's wife called a witness, Brook Gaines, an employee of CCDCFS. She received a referral regarding the incident and met with the Fords and K.C. on January 18, 2018. K.C. told her what precipitated the belt incident was her revealing to her mother that Ford was communicating with his ex-wife by text messages. Gaines observed bruises on K.C.'s left leg about the size of a half dollar, a longer bruise on her right knee about the size of a dollar bill, a bruise on her lower back side, a bruise on upper left thigh the size of a nickel, and bruises on her left arm looking like four fingerprints left by someone grabbing her arm hard. She testified

that under the agency's standards, discipling a child with a belt would be appropriate provided it did not cause bruising. She testified K.C. did not require medical attention; she referred the family for counseling; the family was cooperative; and the agency had no concerns regarding physical abuse in the family and closed the case in March 2018.

**Verdict and Sentence**

{¶ 13} The trial court found the Fords not guilty of Count 12 (endangering children in violation of R.C. 2919.22(A)), and also found Ford not guilty of Count 13 (endangering children in violation of R.C. 2919.22(B)(1)) and Count 14 (endangering children in violation of R.C. 2919.22(B)(3)). The court explained that the state failed to prove beyond a reasonable doubt that the defendants' conduct resulted in serious physical harm, or created a substantial risk to the health or safety of the child, or created a substantial risk of serious physical harm to the child, as required by the endangering-children counts. However, the court found Ford guilty of Count 15, domestic violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A), which required a proof of physical harm instead of serious physical harm.

{¶ 14} At sentencing, the trial court remarked that Ford's conduct exceeded corporal punishment when he pushed her down and held her down with his knee on her neck and then slammed her into a wall. While Ford did not testify at trial, he disputed K.C.'s testimony regarding the incident when he spoke at the sentencing

hearing. He denied putting his knee on her neck, pushing her down, or slamming her into the wall.

{¶ 15} The trial court sentenced Ford to a term of 120 days in county jail for his convictions relating to Counts 1 to 11, and a concurrent term of 120 days in county jail for his conviction of domestic violence as charged in Count 15 .

{¶ 16} On appeal, appellant raises the following assignment of error for our review:

> The record does not support appellant's conviction for domestic violence.

**Applicable Law**

{¶ 17} Ford was convicted of domestic violence as defined in R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause *physical harm* to a family or household member."[1] (Emphasis added.) R.C. 2919.25(A) prohibits a person to knowingly cause or attempt to cause "physical harm" to a family member. The term "physical harm" in the domestic violence statute is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 18} Under the assignment of error, Ford argues his conviction is not supported by the evidence because he proved the affirmative defense of parental

---

[1] We note that Ford was charged under R.C. 2919.25(A), which requires a proof of "physical harm," as opposed to R.C. 2919.25(B), which states that "[n]o person shall recklessly cause *serious physical harm* to a family or household member." (Emphasis added.)

discipline. He maintains that his striking of his stepdaughter with a belt was proper and reasonable as a discipline for her misbehaver.

{¶ 19} Ford claims that "the record does not support [his] conviction for domestic violence" and that the state "must prove beyond a reasonable doubt that [he] knowingly caused or attempted to cause physical harm to a household or family member * * *," without clearly framing it as a sufficiency-of-evidence challenge or a manifest-weight challenge. Therefore, before evaluating the merit of Ford's argument, we first clarify the nature of his claim.

*Suchomski* and *Faggs*

{¶ 20} In the seminal case on corporal punishment, *State v. Suchomski*, 58 Ohio St.3d 74, 567 N.E.2d 1304 (1991), the Supreme Court of Ohio recognized that a parent has a right to administer proper and reasonable corporal punishment as a method of parental discipline. In *Suchomski*, appellant was convicted of domestic violence under R.C. 2919.25(A) for punching his child with a fist and pounding his head against the wall. He argued that charging him with domestic violence pursuant to R.C. 2919.25(A) would effectively prohibit a parent from using corporal punishment to discipline a child. He contended that the General Assembly, in enacting R.C. 2919.22,[2] recognized a parent's right to administer proper and

---

[2] R.C. 2919.22 ("Endangering children) defines a type of child endangering where corporal punishment is excessive under the circumstances and creates a substantial risk of serious physical harm to a child. R.C. 2919.22(B) states, in pertinent part:

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

reasonable corporal punishment as long as serious physical harm to the child did not result. The Supreme Court of Ohio rejected appellant's argument and affirmed his conviction of domestic violence. The court stated the following:

> Nothing in R.C. 2919.25(A) prevents a parent from properly disciplining his or her child. The only prohibition is that a parent may not cause "physical harm" as that term is defined in [R.C. 2901.01]. "Physical harm" is defined as "any injury[.]" "Injury" is defined in Black's Law Dictionary (6 Ed. 1990) 785 as "*** [t]he invasion of any *legally protected interest of another*." (Emphasis added.) A child does not have any legally protected interest which is invaded by proper and reasonable parental discipline.

*Id.* at 76.

{¶ 21} Pursuant to *Suchomski*, therefore, a parent has a right to administer proper and reasonable corporal punishment as a method of parental discipline. *State v. Hicks*, 88 Ohio App.3d 515, 518, 624 N.E.2d 332 (10th Dist.1993) (pursuant to *Suchomski*, a parent may use corporal punishment without violating R.C. 2919.25(A) as long as the parental discipline is proper and reasonable under the circumstances).

{¶ 22} However, the above passage caused much confusion among the appellate districts as to whether reasonableness of the parental discipline goes toward the state's burden to prove the physical-harm element of domestic violence

---

* * *

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is *excessive under the circumstances and creates a substantial risk of serious physical harm to the child*[.]

(Emphasis added.)

or goes toward a defendant's establishment of an affirmative defense to the charge of domestic violence.[3] *See State v. Rosa*, 2013-Ohio-5867, 6 N.E.3d 57 (7th Dist.), ¶ 20-26. If unreasonable parental discipline is a component of the element of physical harm, then it is the state's burden to prove the discipline is unreasonable beyond a reasonable doubt; if reasonable parental discipline is an affirmative defense, the parent bears the burden of proof, albeit under the lower preponderance of the evidence standard. *Id.* at ¶ 20. In *Rosa*, the Seventh District held that the issue of reasonable parental discipline is a component of the physical-harm element of the domestic violence offense.

{¶ 23} Recognizing a split among the appellate districts on this issue, the Supreme of Ohio recently granted an interdistrict conflict certified by the Fifth District between its decision in *State v. Faggs*, 5th Dist. Delaware No. 17 CAA 10 0072, 2018-Ohio-3643 (analyzing the parental discipline issue as an affirmative defense) and the Seventh District's decision in *Rosa.* Resolving the conflict, the Supreme Court of Ohio held that reasonable parental discipline is an affirmative defense. *State v. Faggs*, Slip Opinion No. 2020-Ohio-523.

{¶ 24} While the Supreme Court of Ohio in *Faggs* did not specifically address the issue of whether the assertion of parental discipline should be analyzed

---

[3] An affirmative defense is "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence." R.C. 2901.05(D)(1)(b). "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, * * * is upon the accused." R.C. 2901.05(A).

under a sufficiently-of-the-evidence challenge or a manifest-weight challenge, the court affirmed the Fifth District's decision in *Faggs*, 2018-Ohio-3643, which upheld the domestic violence conviction of a parent who claimed the affirmative defense of parental discipline. In its decision, the Fifth District reasoned that because proper and reasonable parental discipline was an affirmative defense, it should be analyzed as a manifest-weight challenge. It concluded that the trial court, in rejecting appellant's claim of proper and reasonable parental discipline, did not clearly lose its way and create a manifest miscarriage of justice. *Id.* at ¶ 26.

{¶ 25} Our court has properly analyzed a parent's claim of parental discipline as an affirmative defense and evaluated it under a manifest-weight review. *See, e.g.*, *Westlake v. Y.O.*, 8th Dist. Cuyahoga No. 107226, 2019-Ohio-2432 (a sufficiency challenge does not implicate affirmative defenses; rather, the claim of parental discipline should be properly reviewed under a manifest-weigh-of-the-evidence claim); and *Cleveland v. Mincy*, 8th Dist. Cuyahoga No. 106224, 2018-Ohio-3565, ¶ 24 (whether defendant was entitled to a parental-discipline affirmative defense has no bearing on the sufficiency of the evidence).

{¶ 26} When evaluating a manifest-weight claim, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).

{¶ 27} In evaluating a defendant-parent's claim that the conviction of domestic violence is against the weight of the evidence, we consider whether the defendant sustains his or her burden of proof with regard to the affirmative defense that he or she used only proper and reasonable parental discipline. *State v. Jones*, 140 Ohio App.3d 422, 429, 747 N.E.2d 891 (8th Dist.2000).

{¶ 28} "Proper" has been defined as "suitable or appropriate" and "reasonable" as "not extreme or excessive." *State v. Hauenstein*, 121 Ohio App.3d 511, 516, 700 N.E.2d 378 (3d Dist.1997). Furthermore, the reasonableness of corporal punishment in each case must be evaluated in light of all the relevant facts and circumstances, including "the child's age, the child's behavior that led to the parent's action, the child's response to non-corporal punishment, and the location and severity of the punishment," as well as "the parent's state of mind while administering the discipline." *Jones, supra*, at 430.

## Analysis

{¶ 29} While Ford asserted the affirmative defense of parental discipline and claimed his striking K.C. with a belt was parental discipline in response to her posting inappropriate content on the social media, K.C. testified that the belt incident was not precipitated by her conduct in the social media but rather by Ford's anger over her revealing his communication with his ex-wife to her mother. Ford did not present witnesses to refute K.C.'s testimony, and Lydia Ford's witness Brooke Gaines testified that K.C. had told her what immediately triggered the belt incident was K.C.'s reporting of Ford's communication with his ex-wife. Therefore,

an analysis of whether the purported parental discipline was proper and reasonable under the circumstances is not even warranted by the testimony presented in this case.

{¶ 30} *Even if* we were to consider Ford's striking his stepdaughter with a belt as parental discipline, the courts have upheld convictions of domestic violence under R.C. 2919.25(A) when a parent punished a child with a belt leaving visible marks. In *Jones, supra*, a parent spanked her 11-year-old son with a belt for being dishonest at school and the spanking left welts and bruising on the child's legs and torso still visible the following day. This court upheld her conviction of domestic violence, concluding the conviction did not create a manifest miscarriage of justice. In *State v. Cantwell*, 5th Dist. Licking No. 2007 CA 00062, 2008-Ohio-3928, a father struck his four-year-old daughter several times on the buttocks with a belt to discipline her for crying and screaming and refusing to go to bed. The belting left bruises on the child's buttocks and legs. The Fifth District similarly concluded the conviction of domestic violence was not against the manifest weight of the evidence.

{¶ 31} Ford argues his punishment of K.C. was not excessive because K.C. herself testified she was not "injured" and the CCDCFS had no concerns regarding physical abuse in the family. However, the bruises on K.C.'s leg, knee, back, upper thigh, and arm were visible three days after the incident, observed by both the police officer who took the police report and the CCDCFS employee. The photographs taken three days after the incident by a police officer, which showed visible bruises, were admitted as exhibits. Ford was apparently aware of the excessiveness of the

punishment as he instructed K.C. not to go to school the next day to avoid her revealing the incident to her teachers. Ford's claim is also belied by his own characterization of the incident to Latesha McFarland; Latesha McFarland testified that Ford and his wife Lydia told her that they "jumped" K.C. and "beat her up really bad." [4]

{¶ 32} Furthermore, *even if* Ford's striking his stepdaughter with a belt could be characterized as proper parental discipline in response to K.C.'s misbehavior, Ford's conduct significantly exceeded corporal punishment. K.C.'s testimony showed that Ford grabbed her by the arm, pushed her to the floor, held her down with his knee on her neck, and then slammed her to a wall in the kitchen and threw her around in the living room, *before* striking her with a belt.

{¶ 33} Having reviewed the evidence in this case, we conclude that the trial court, in rejecting Ford's claim that his conduct constituted proper and reasonable parental discipline, did not clearly lose its way and create such a manifest

---

[4] Ford cites *State v. Ivey*, 98 Ohio App.3d 249, 648 N.E.2d 519 (8th Dist.1994), to support his claim that the corporate punishment he administered on K.C. and the resulting harm was not excessive. In *Ivey*, a father whipped his ten-year-old son with a belt for not telling him about a detention at school and the child suffered bruises and welts on his buttocks and legs. The father was convicted of multiple counts of endangering children. This court reversed, concluding that the state failed to prove by sufficient evidence that the parent's whipping resulted in serious physical harm or created a substantial risk of serious physical harm to the child. *Ivey* is not applicable to this case as it concerned child endangering, not domestic violence. The former requires a proof of "serious physical harm" and the latter "physical harm." Notably, the trial court here acquitted Ford of the child endangering counts and only convicted of him of domestic violence.

miscarriage of justice that his domestic violence conviction must be reversed and a new trial ordered.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE,, JR., J., CONCUR